# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| ULTRAVISION TECHNOLOGIES, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. |
| v. | ) |
| | ) **JURY TRIAL DEMANDED** |
| LEYARD OPTOELECTRONIC CO., and | ) |
| LEYARD AMERICAN CORPORATION, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Ultravision Technologies, LLC ("Ultravision" or "Plaintiff"), for its Complaint against Defendants Leyard Optoelectronic Co. and Leyard American Corporation (collectively "Leyard" or "Defendants") alleges as follows:

### RELATED ACTION

1. This action is related to In the Matter of Certain Modular LED Displays, Assemblies Thereof, Components Thereof, and Products Containing Same, ITC Docket No. 337-__, United States International Trade Commission, Washington, D.C. ("ITC"), filed on March 27, 2018. In the ITC action, the two patents asserted in this case are also asserted against Defendants.

### INTRODUCTION

2. Ultravision is a leading innovator, designer, manufacturer, and distributor of commercial high-efficiency digital video displays, LED lighting, and LED digital advertising

displays. Ultravision's LED lighting products have revolutionized the commercial lighting industry.

3. The Chief Executive Officer of Ultravision, William Hall, has a long-standing career in the commercial lighting and video billboard industry in the United States. Mr. Hall formed Ultravision's predecessor, Ultravision Holdings, LLC ("Ultravision Holdings"), in 2010 to focus on LED displays and lights for the commercial billboard industry. Ultravision Holdings, LLC is a limited liability company organized under the laws of the State of Texas. Ultravision Technologies, LLC, as defined above as "Ultravision," was formed in 2014. Ultravision obtained substantially all of the assets, including all of the intellectual property (e.g., patents and trade secrets) and contract rights, of Ultravision Holdings. Ultravision is a leading innovator, designer, manufacturer, and distributor of commercial high-efficiency digital video displays, LED lighting, and LED digital advertising displays.

4. Since its founding, innovation has been a key driver of Ultravision's success. Prior to Ultravision's development of its revolutionary UltraPanel product, LED-based digital displays suffered from significant problems, including overheating, high failure rates, and large costs associated with both their manufacturing, installation, and operation.

5. For example, previous LED display panels were not waterproof, and thus needed to be placed in a sealed cabinet in order to operate outside. These waterproof cabinets required fans and air conditioning systems which resulted in very high operating costs.

6. Additionally, previous LED display panels were not modular, meaning that each installation required a bespoke design. This resulted in expensive manufacturing, shipping, and installation. These LED display panels were also difficult to maintain, often requiring expensive maintenance contracts with specialized technicians.

7. Recognizing a need in the industry for a more cost effective and overall improved LED display solution, Mr. Hall, and a small team of engineers at Ultravision, completely revolutionized the industry by developing and introducing the UltraPanel product: a lightweight modular, waterproof LED display panel in standard sizes that can easily be built into large displays of different sizes and shapes, requires no waterproof outer cabinet, and runs on single-phase electric power. This lightweight, single-phase power, modular LED display panel dramatically lowered the customer's total cost of installation and total cost of operation compared to older traditional cabinet LED display designs. A picture of one of Ultravision's UltraPanel products is shown below:



*(Figure 1 – Ultravision's UltraPanel)*

8. Each UltraPanel is approximately 1 foot by 2 foot, and can include anywhere from 512 pixels to as many as 12,800 pixels. The panels are specifically designed and configured to be assembled into larger LED signs and billboards. Ultravision's UltraPanel displays can be configured and assembled as a small billboard or sign, a sports team's scoreboard or digital display, or even a large scale "Spectacular," such as what is commonly seen in New York City's Times Square. Ultravision designed, developed, engineered, assembled, and

installed a majority of the LED displays in Times Square. One of Ultravision's installations in Times Square is shown below:



*(Figure 2 – Ultravision's UltraPanel configured as digital billboard in Times Square)*

9. Further, Ultravision designed, engineered, manufactured, and installed an installation on Cromwell Road in London, which is the largest digital display in Europe. The Cromwell Road installation is shown below:



*(Figure 3 – Ultravision's UltraPanel forming the largest digital display in Europe)*

4

10. Upon its introduction, the UltraPanel immediately made prior cabinet-based designs obsolete. The UltraPanel's unique combination of features has led to nearly the entire LED display industry, including but not limited to Defendants, copying this modular, waterproof design.



*(Figure 4 – The evolution of the LED display panel)*

11. Ultravision's legacy of innovation in the field of LED technology has resulted in numerous United States patents. Specifically, Ultravision owns by assignment the rights to U.S. Patent Nos. 9,349,306 and 9,916,782 (collectively, the "Patents-in-Suit").

12. Foreign companies, such as Leyard Optoelectronic Co., have recently entered the U.S. market by offering for sale and selling products that infringe the Patents-in-Suit without a license to do so.

## THE PARTIES

13. Ultravision is a limited liability company organized and existing under the laws of the State of Delaware and is registered to do business in Texas. Ultravision has its principal place of business at 4542 McEwen Road, Dallas, Texas 75244.

14. Upon information and belief, defendant Leyard Optoelectronic Co. is a corporation organized and existing under the laws of China, with a principal place of business located at No.9 Zhenghongqi West Street, North of Summer Palace, Haidian District, Beijing, P.R. China.

15. Upon information and belief, defendant Leyard American Corporation is a corporation organized and existing under the laws of Delaware, with a principal place of business located at 1692 Barclay Boulevard, Buffalo Grove, Illinois 60089 and may be served with process through its registered agent United States Corporation Agents, Inc. at 300 Delaware Avenue, Suite 210-A, Wilmington, Delaware 19801.

## JURISDICTION

16. This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1, et seq. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

17. This Court has personal jurisdiction over Defendants. Upon information and belief, Defendants regularly conduct business and have committed acts of patent infringement and/or have induced acts of patent infringement by others in this judicial district and/or have contributed to patent infringement by others in this judicial district, the State of Texas, and elsewhere in the United States.

18. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because, among other things, defendant Leyard Optoelectronic Co. is a foreign defendant not resident in the United States, and thus may be sued in any judicial district pursuant to 28 U.S.C. § 1391(c)(3).

19. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 and 1400(b) because, among other things, defendant Leyard American Corporation is subject to personal jurisdiction in this judicial district, has a regular and established place of business in this judicial district and has purposely transacted business involving the accused products in this judicial district, and certain of the acts complained of herein occurred in this judicial district.

20. Defendants are subject to this Court's jurisdiction pursuant to due process and/or the Texas Long Arm Statute due at least to their substantial business in this State and judicial district, including (a) at least part of their past infringing activities, (b) regularly doing or soliciting business in Texas, and/or (c) engaging in persistent conduct and/or deriving substantial revenue from goods and services provided to customers in Texas.

## PATENTS-IN-SUIT

21. On May 24, 2016, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,349,306 (the "'306 Patent") entitled "Modular Display Panel." A true and correct copy of the '306 Patent is available at: http://pdfpiw.uspto.gov/.piw?PageNum=0&docid=9349306&IDKey=&HomeUrl=http%3A%2F%2Fpdfpiw.uspto.gov%2F.

22. On March 13, 2018, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,916,782 (the "'782 Patent") entitled "Modular Display Panel." A true and correct copy of the '782 Patent is available at http://pdfpiw.uspto.gov/.piw?PageNum=0&docid=9916782&IDKey=&HomeUrl=http%3A%2F%2Fpdfpiw.uspto.gov%2F.

23. Ultravision is the sole and exclusive owner of all right, title and interest in and to the '306 Patent and '782 Patent, (collectively, the "Patents-in-Suit"), and holds the exclusive

right to take all actions necessary to enforce its rights to the Patents-in-Suit, including the filing of this patent infringement action. Ultravision also has the right to recover all damages for past, present, and future infringement of the Patents-in-Suit and to seek injunctive relief as appropriate under the law.

24. Ultravision has at all times complied with the marking provisions of 35 U.S.C. § 287 with respect to the Patents-in-Suit. Ultravision references its patents on its website, http://www.ultravisioninternational.com, and also references its patents and its website in the product packaging for its products.

## COUNT I
### (Infringement of the '306 Patent)

25. Paragraphs 1 through 24 are incorporated by reference as if fully set forth herein.

26. Ultravision has not licensed or otherwise authorized Defendants to make, use, offer for sale, sell, or import any products that embody the inventions of the '306 Patent.

27. Defendants have directly infringed and continue to directly infringe the '306 Patent, including at least claim 1, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '306 Patent. Such products include modular LED displays, such as Defendants' CLO series product. An image of the CLO series product is shown below:



28. Upon information and belief, the CLO series product is a modular display panel and comprises a casing having a recess and the casing also comprises attachment points for use in attachment as part of a multi-panel modular display. Upon information and belief, the casing comprises a first side and an opposite second side, wherein the first side of the casing includes a surface that is part of an outer surface of the modular display panel.

29. Upon information and belief, the CLO series product comprises a printed circuit board disposed in the recess, and a plurality of LEDs attached to a front side of the printed circuit board.

30. Upon information and belief, the CLO series product comprises a driver circuit attached to the printed circuit board and a power supply unit for powering the LEDs.

31. Upon information and belief, the CLO series product comprises a framework of louvers disposed over the printed circuit board and disposed between rows of the LEDs.

32. Upon information and belief, the CLO series product is sealed to be waterproof.

33. Upon information and belief, the CLO series product infringes at least claim 1 of the '306 Patent.

34. Defendants have indirectly infringed and continue to indirectly infringe one or more claims of the '306 Patent by knowingly and intentionally inducing others, including customers and end-users, to directly infringe to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States products that include infringing technology, including modular LED displays and display boards comprising multiple modular LED displays.

35. Defendants, with knowledge that these products, or the use thereof, infringes the '306 Patent at least as of the date of this Complaint, knowingly and intentionally induced, and continue to knowingly and intentionally induce, direct infringement of the '306 Patent by supplying these products to end users for use in an infringing manner.

36. Defendants induced infringement by others, including end users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the '306 Patent, but while remaining willfully blind to the infringement.

37. Ultravision has suffered damages as a result of Defendants' direct and indirect infringement of the '306 Patent in an amount to be proved at trial.

38. Ultravision has suffered, and will continue to suffer, irreparable harm as a result of Defendants' infringement of the '306 Patent, for which there is no adequate remedy at law, unless Defendants' infringement is enjoined by this Court.

## COUNT II
### (Infringement of the '782 Patent)

39. Paragraphs 1 through 24 are incorporated by reference as if fully set forth herein.

40. Ultravision has not licensed or otherwise authorized Defendants to make, use, offer for sale, sell, or import any products that embody the inventions of the '782 Patent.

41. Defendants have directly infringed and continue to directly infringe the '782 Patent, including at least claim 1, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '782 Patent. Such products include modular LED displays, such as Defendants' CLO series product. An image of the CLO series product is shown below:



42. Upon information and belief, the CLO series product is a modular display panel comprising a shell comprising a first thermally conductive material, wherein the sidewalls of the shell comprise plastic.

43. Upon information and belief, the CLO series product comprises a printed circuit board disposed in the shell, and a plurality of LEDs attached to a first side of the printed circuit board.

44. Upon information and belief, the CLO series product comprises a driver circuit disposed in the shell and coupled to the plurality of LEDs from a second side of the printed circuit board.

45. Upon information and belief, the CLO series product comprises a power supply unit for powering the LEDs, with the printed circuit board disposed between the power supply unit and the LEDs.

46. Upon information and belief, the CLO series product comprises a second thermally conductive material disposed between the power supply unit and an outer back side of the panel.

47. Upon information and belief, the CLO series product comprises a protective structure disposed over the first side of the printed circuit board.

48. Upon information and belief, the CLO series product is sealed to be waterproof.

49. Upon information and belief, the CLO series product infringes at least claim 1 of the '782 Patent.

50. Defendants have indirectly infringed and continue to indirectly infringe one or more claims of the '782 Patent by knowingly and intentionally inducing others, including customers and end-users, to directly infringe to directly infringe, either literally or under the

doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States products that include infringing technology, including modular LED displays and display boards comprising multiple modular LED displays.

51. Defendants, with knowledge that these products, or the use thereof, infringes the '782 Patent at least as of the date of this Complaint, knowingly and intentionally induced, and continue to knowingly and intentionally induce, direct infringement of the '782 Patent by supplying these products to end users for use in an infringing manner.

52. Defendants induced infringement by others, including end users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the '782 Patent, but while remaining willfully blind to the infringement.

53. Ultravision has suffered damages as a result of Defendants' direct and indirect infringement of the '782 Patent in an amount to be proved at trial.

54. Ultravision has suffered, and will continue to suffer, irreparable harm as a result of Defendants' infringement of the '782 Patent, for which there is no adequate remedy at law, unless Defendants' infringement is enjoined by this Court.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Ultravision prays for relief against Defendants as follows:

a. Entry of judgment declaring that Defendants have directly and/or indirectly infringed one or more claims of each of the Patents-in-Suit;

b. An order pursuant to 35 U.S.C. § 283 permanently enjoining Defendants, their

officers, agents, servants, employees, attorneys, instrumentalities and those persons in privity, active concert, or participation with it, from further acts of direct and/or indirect infringement of the Patents-in-Suit including the manufacture, sale, offer for sale, importation and use of the infringing products;

      c.    A full accounting for and an award of damages to Ultravision for Defendants' infringement of the Patents-in-Suit, but in no event less than a reasonable royalty, including enhanced damages pursuant to 35 U.S.C. § 284, together with pre- and post-judgment interest; and

      d.    Entry of judgment declaring that this case is exceptional and awarding Ultravision its costs and reasonable attorney fees under 35 U.S.C. § 285; and

      e.    Such other and further relief as the Court deems just and proper.

Dated: March 27, 2018

Respectfully submitted,

    */s/ Alfred R. Fabricant*
Alfred R. Fabricant
NY Bar No. 2219392
Email: afabricant@brownrudnick.com
Peter Lambrianakos
NY Bar No. 2894392
Email: plambrianakos@brownrudnick.com
Vincent J. Rubino, III
NY Bar No. 4557435
Email: vrubino@brownrudnick.com
Joseph M. Mercadante
NY Bar No. 4784930
Email: jmercadante@brownrudnick.com
Alessandra C. Messing
NY Bar No. 5040019
Email: amessing@brownrudnick.com
**BROWN RUDNICK LLP**
7 Times Square
New York, NY 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801

Samuel F. Baxter
Texas State Bar No. 01938000
Email: sbaxter@mckoolsmith.com
Jennifer L. Truelove
Texas State Bar No. 24012906
Email: jtruelove@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 E. Houston Street, Suite 300
Marshall, Texas 75670
Telephone:(903) 923-9000
Facsimile: (903) 923-9099

*ATTORNEYS FOR PLAINTIFF*
*ULTRAVISION TECHNOLOGIES, LLC*